BROWN v. SCHERRER.

5  255<br>
c21c 481

1. WILLS—REVOCATION BY OPERATION OF LAW.
At common law marriage and the birth of an heir operated to revoke a will.
2. SAME.
Marriage, although without issue, operates in this state to revoke a will.

*Appeal from the County Court of Arapahoe County.*

Mr. E. P. HARMON and Mr. T. M. PATTERSON, for appellant.

Mr. Isaac E. Barnum, for appellee.

Bissell, P. J., delivered the opinion of the court.

This appeal presents a question entirely new to our juris-prudence. We have therefore approached its consideration with great circumspection and with careful study of all the decisions which industrious and able counsel have collected.

The question is: Does marriage, without the birth of an heir, operate to revoke a will?

In October, 1881, Richard Brown was the husband of Celestia. On that date he made his will, whereby he bequeathed to her all his personal property and a life estate in all else of which he should die seized, and limited on that estate a fee in remainder to Henry and William Scherrer, and appointed their father his executor. There was no issue of this marriage. The wife died in February, 1884. Subsequently, Richard intermarried with Catherine M., and lived with her as man and wife till February, 1893, when he died, leaving Catherine as his only heir at law. In April, Alexander Scherrer offered the will of 1881 for probate. Its probating was resisted by the heir and widow Catherine on two hypothesis. *First:* On the ground that the two sons of Alexander, who were the legatees of the fee of the real estate, were not of kin, and disentitled to take because of an attempted revocation of the will by Richard Brown, the devisor. She set up that the elder Scherrer was the custodian of the will, averred an attempt by Brown to procure possession of the testament for the purposes of cancellation, and acts of Scherrer, which, if provable and sustained, would tend to show that he had fraudulently prevented a statutory cancellation. *Second:* On the theory that when Celestia deceased and the devisor intermarried with Catherine, the will was revoked by operation of law.

The objections were demurred to and the will was admitted to probate. The widow appealed. The first objection will be disposed of with but a single suggestion. The statute of

Colorado which relates to the cancellation of wills is almost identical with the English statute of frauds on this subject. 29 Car. 11, chap. 3, sec. 6; Gen. Statutes of Colorado, 1883, sec. 3484.

Since the passage of the statute, the English judges have almost universally held that a statutory cancellation must be established if the probate is to be successfully resisted. There has been some disposition to admit proof of acts of the testator which would serve to establish a revocation, though declarations made by him at the time have been held clearly incompetent to prove that the will was revoked. To this extent the modern authorities also go. *Christopher v. Christopher*, 2 Dickens, 445; *Marston v. Roe*, 8 Adolph. & Ellis, 14 (35 Eng. Law, 457); *Wheeler v. Wheeler*, 1 R. I. 364; *Hoitt v. Hoitt*, 63 N. H. 475.

This rule is, of course, subject to the qualification suggested in some of the cases, that, when acts showing a purpose to destroy are once offered, the declarations may be introduced in order to illustrate and signify the intent. Counsel insist that the rule ought to be further modified when there is proof of fraudulent conduct by the custodian, legatee or proponent, of which the legatees seek to take advantage. Whether a case may arise in which the courts shall deem it wise to ingraft such an exception on the general doctrine is here only a matter of unprofitable speculation, since we practically eliminate this subject from our inquiry, and put the decision on the broad basis of a revocation by operation of law.

At the threshold, we desire to insist that as we understand the cases and the reasons underlying the rule that marriage *and* the birth of an heir operated to revoke a will, we do not depart from the ancient landmarks. The doctrine was borrowed from the ecclesiastical law, and it was many years after its first suggestion before the common law lawyers would accept it. It was long regarded by able common law judges as a practical repeal of the statute of frauds, which has always been held in high esteem by these tribunals. It was, however,

finally settled by two or three well considered cases. No
English courts have since questioned the law. *Spraage v.
Stone*, 2 Ambler, 721 ; *Doe dem. Lancashire v. Lancashire*,
5 Durn. & East, 24 ; *Kenebel v. Scrafton*, 2 East, 530.

According to these decisions, marriage and the birth of an
heir did revoke a will. Lord Kenyon, in the *Lancashire
Case*, held that it was a tacit condition annexed to all wills
that these two concurring circumstances should annul the
antecedent devise. He put it on the impregnable ground
that these two circumstances worked such a material change
in the testator's condition, it was not to be expected his de-
vise was made in contemplation of such changed obligations.
The husband and father's duty to his family was deemed to
furnish an irrefragable argument against the contention that
the will should stand as the expression of the testator's intent,
notwithstanding the assumption of these new relations. The
learned judge said it was not to be supposed that the wife
and heir, who were peculiarly the objects of tender solicitude
on the part of the husband and father, should be left unpro-
tected by his bounty—a reason which is as strong and opera-
tive to-day as it was when the rule was first ingrafted on the
body of the common law. It is wise, however, to consider
the limitations which the common law courts put upon the
rule as they accept it, and to express the reasons which they
assign for the exceptions, since these reasons very largely
influence this court in arriving at its determination. Those
courts undoubtedly adjudged that marriage alone was not
operative to revoke a will. This law has been repeatedly re-
announced in this country by numberless courts, but no case,
so far as we are able to discover, presented the precise con-
siderations offered in the present suit to influence the court.
It may be well to suggest that, as we read the modern cases,
wherever this rule has been reannounced it has generally
been in actions where either there was both marriage and the
birth of an heir, or in cases where there was no such control-
ling statute as we hold ours to be. Many of the modern cases
undoubtedly say, by way of quotation and repetition of these

common law authorities, that marriage alone does not operate to revoke a will; but these adjudications do not attempt to analyze the law when they apply it, or, if they do, they are without similar statutes, or the statutory rule does not to them seem as controlling as it does to us. The English common law authorities held that neither marriage, nor marriage followed by the birth of a female child, would operate to revoke a will whereby lands were devised, although together they might operate to destroy it, so far as it concerned the personalty. The reason they give, and it is very sound viewed from the standpoint of those judges, is that neither of these two classes of people—wives or girls—could inherit lands. Under the English statute of primogeniture, the lands went to the male heirs in absolute succession, and ordinarily without power on the part of the devisor to change the right of succession. It is thus apparent that, in the acceptance of this rule of the ecclesiastical law, the English common law judges went to the limit essential to the absolute adoption of the principle. In other words, they certainly decided that wherever an heir who could inherit land sprung into being, it should be held to revoke the will, since it was not to be presumed that the will was executed in the contemplation of such a changed condition. This broad basis seems not to have been always considered by the American courts when they have attempted to restate and reapply existing law to new and novel conditions. In the conclusion at which we arrive, we are not, however, without the support of cases in this country. *Garrett v. Dabney*, 27 Miss. 335; *Tyler v. Tyler*, 19 Ill. 151; *Morgan v. Ireland et al.*, 1 Idaho, 786; *Swan v. Hammond*, 138 Mass. 45; *vide* Tiedeman on Real Property, sec. 888.

The authority of these adjudications is very much supplemented by our statutes of descent. Chapter 28, General Statutes of Colorado, broadly provides that when a person dies intestate, without children, but leaving either husband or wife, the wife or husband, as the case may be, shall inherit the entire property subject to the payment of debts. Chap-

ter 72 confers upon married women the right to make wills
bequeathing her real as well as her personal property, but it
contains a broad limitation upon the rights of either the hus-
band or the wife concerning the testamentary disposition of
property. No matter what will either one may make, neither
has capacity to devise more than one half of the property of
which they may die seized. These statutes have been con-
strued in this state by the supreme court as well as by our
own, and under those decisions it is undoubtedly true that a
will of more than one half the property is inoperative to
deprive either husband or wife of their rights of inheritance.
*Mitchell v. Hughes*, 3 Colo. App. 43.

Thus it is evident that by the statutes of Colorado, the
wife is by law an absolute heir to the husband's estate, so
that she is put by that legislation into precisely the same
position the male heir occupied under the English law of
primogeniture with reference to the inheritance of lands,
with this exception : while the English heir took all the lands
and the testator was powerless to deprive him of the right of
succession, in Colorado the wife holds this position only with
reference to half the estate. That this position is by the
statute limited to an aliquot part of the lands of which the
devisor may die seized should make no difference in the
application of the rule or in its scope and extent. The
English law rests on the firm foundation that the birth of
an heir who can inherit lands shall be held operative to de-
stroy a will, because it is not to be conceived that the testa-
tor has devised his estate in view of such an extraordinary
alteration in his condition. The same principle and the same
rule can be urged with like force in our own legislation.
As stated by the English cases, and in those which have
followed the law which they announce, it is a strained con-
ception to assume that a man who has made a will while un-
married has made it in contemplation of his assumption of the
marriage relation. There is no force in the suggestion that
because the woman becomes an heir by virtue of the stat-
ute, she does not come within the beneficent provisions of

the rule as declared at the common law. It was by the law only that the male heir succeeded to the testator's lands and took his inheritance. That the wife has become an heir by legislation forms no lesser reason for the application of the rule. The Mississippi case, in construing their act of 1839, with reference to its force and effect upon the will of a woman executed when she was a *feme sole*, who thereafter intermarried, is entirely in accord and in harmony with the reasoning of this court. The court decided that since, by operation of the statute, the husband became entitled to an absolute interest in fee in the estate of the woman, it must be held operative to destroy the will of the *feme sole*, because it was inconsistent with her absolute right of testamentary disposition. The same legal limitations to a certain extent exist in this state, because by virtue of the assumption of the marriage relation and the death of either one party or the other, the survivor has an absolute vested interest in fee in the estate of the decedent. The decision is of course only useful as furnishing a reason for the doctrine declared. It is inapplicable as a construction of our testamentary statutes, for we have modifying provisions which would in some particulars possibly lead to different conclusions. We believe we have decided this case upon principle, and trust we have been entirely uninfluenced by the equitable considerations which the facts of the case present. It is quite true the testator devised his real property to two strangers, to whom he was under no obligations prior to the time he contracted his marriage with the present appellant. It is equally true he attempted to destroy the antecedent will, and was prevented by the fraud of the father of the two children who would take by the terms of the devise. The only force which we have given to these facts is by way of illustration, to give significance to the reasons which the common law courts originally expressed in the adoption of the rule itself. It is hardly to be supposed that when the testator executed a will whereby the fee of his estate was given to these two strangers, he could have made his devise

in contemplation of his marriage with the appellant, who should thereby, at least as to the aliquot part thereof, be left out of his consideration as an object of his bounty. It operates to the injury of no one who is entitled to aid at the hands of the testator to hold there was annexed to the will the tacit condition that in case of a subsequent marriage the will should be deemed to be revoked.

In accordance with what we believe to be the spirit and the reason of the doctrine, and in accord with what we believe to be the purpose and spirit of our legislation, we hold the marriage of a testator, whether or not it be followed by the birth of an heir, is operative to revoke any will which he has antecedently made.

Since the judgment of the court below does not accord with the law as it is herein declared, the cause will be reversed and remanded.

*Reversed.*