[No. 8219.]

## IN RE ESTATE OF MATTEOTE.

·1.  MARRIAGE—*Common Law—Evidence.*  Husband and wife, after a cohabitation of years, entered into an agreement of separation, and lived apart for less than one year.  During this separation the husband procured a divorce.  Shortly thereafter they became reconciled, and without the performance of any ceremony resumed their relations, and lived in great harmony, until the husband's death, all this time being recognized by their neighbors and acquaintances, and recognizing each other, as husband and wife.  *Held* a marriage at common law; that the wife, on the death of the husband, was entitled to administer upon his estate, and to the entire inheritance, in the absence of issue. (567-569.)

2.  —— *Separation—Reconciliation—Effect.*  The reconciliation of husband and wife abrogates articles of separation previously agreed upon. (569.)

3.  WILL—*Revocation by Subsequent Marriage.*  A common law marriage revokes a previous will of one of the parties. (570.)

*Error to San Miguel County Court.*   Hon. M. L. BROWN, Judge.

Mr. CARL J. SIGFRID, for plaintiff in error.

Messrs. ALLEN & WOY and Mr. H. R. KAUS, for defendants in error.

SCOTT, J., delivered the opinion of the court.

Baptist Matteote and his wife, Mary O. B. Matteote, were married on the 3rd day of December, 1900.  They lived together as husband and wife until November 16th, 1906, when they entered into a written separation agreement, and proceeded to live separate and apart.

Baptist obtained a decree of divorce from his wife July 19th, 1907.  On September 7th, of the same year, the parties were reunited, and from that time lived together as husband and wife until March 4th, 1913, when Baptist died; but there was no formal marriage ceremony performed at the time of their reunion or afterward.

Baptist executed a will on April 30th, 1907, following

the separation and agreement, in which he devised all his property to certain of his relatives residing in Italy. In this instrument he recites that he bequeathes nothing to his wife, because of the settlement contained in the separation agreement. He appointed Batista Cassietto, then of San Miguel County, as executor. Later and before the death of Baptist, Cassietto removed to Italy. Upon the death of Baptist, Mary filed her petition for letters of administration upon the estate, declaring that Matteote died intestate, and claiming her right to be appointed administratrix as his widow, under the provisions of the statute. The Probate Court denied this petition, but upon appeal to the District Court an order was entered directing her appointment which was accordingly done.

It appears that Cassietto, who was named as executor, was in possession of the will, and later sent it to the County Court, and counsel for the legatees presented it for probate. The court sustained the validity of the will and dismissed the proceedings in administration. The administratrix, who as protestant of the will, and as administratrix, brings the case here for review.

The contentions of the plaintiff in error are:

"1. Mary O. B. Matteote was the wife of Baptist Matteote at the time of his death, by reason of a common law marriage, and is, therefore, now his widow.

2. The re-marriage or new marriage of the parties revoked the prior will.

3. The said re-marriage or new marriage wiped the separation agreement out of existence as completely as if it had never been made, and necessarily the divorce."

Matteote and his wife lived together as husband and wife after their first marriage for a period of six years, when there was a separation by mutual agreement. The separation covered a period of about eight months, when they became reunited and lived together as husband and wife until the death of Matteote, or for a period of about

four and one-half years.   Letters were introduced in evidence, written by Baptist to his wife, covering a period of years after they were reunited, and prior to his death, and during times of temporary absence, which exhibit uniform and kindly consideration and affection.   These invariably are addressed to Mrs. Matteote as "Dear Wife," or "Dearest Wife," and signed as "Your affectionate husband, Baptist M."

The following letter, written at a time when they were taking up a new place of residence, affords an insight into their life during this period:

                              "Placerville, Apr. 27, 1911.
Dearest Wife:

Finally, between me and Matt Allen we succeeded in taking lease and bond on a property where we will start to work not later than the 1st of the month.   Have to buy two lots in this town here, too, as with the time I will possibly let build a house.   Right now I could not find a house to rent. I rented only two rooms for awhile.   We will have to make the best of it, the best we can.   Included with this you will find check for $50.00 which will serve you for what you need on your trip, and try to come as soon as possible, as I am tired to be alone.   Regarding the diamond, if you could exchange it for a good pair of diamond earrings of about $200.00 value and get $50.00 or $100.00 over, I would advise you to do so, but be careful not to get robbed in the transaction.   Beyond that I can only salute you dearly and with the hope to hold you in my arms the soonest possible believe me your affectionate husband,

                                        Baptist M."

The testimony of neighbors and acquaintances is uniform and undisputed, that the parties lived together and were universally recognized as husband and wife, after the adjustment of their differences.   The record discloses nothing contrary to this evidence, as regards the relationship

existing between them from the date they were reunited, until the time of the death of Matteote.

In this case there was mutual consent, followed by cohabitation as husband and wife; the parties lived together in the same dwelling; there was continuous and mutual acknowledgment of the married relation; with and among their neighbors and acquaintances, this was their unquestioned reputation; their intercourse was not meretricious; they kept themselves separate and apart from others, and they cleaved to each other until the death of one of them.

Under the holdings of this court, this constituted a valid common law marriage. *Klipfel's Estate v. Klipfel,* 41 Colo. 40, 92 Pac. 26, 124 Am. St. 26; *Taylor v. Taylor,* 10 Colo. App. 303, 50 Pac. 1049.

The effect of this marriage was to revoke the prior will, executed after the separation and before the remarriage. Sec. 7072, Rev. Stat. 1908; *Brown v. Scherrer,* 5 Colo. App. 255, 38 Pac. 427, 21 Colo. 481, 42 Pac. 668.

The authorities are quite uniform in holding that reconciliation between husband and wife will abrogate articles of separation theretofore executed by them, and as was said in *Galusha v. Galusha,* 116 N. Y. 635, 22 N. E. 1114, 6 L. R. A. 487, 15 Am. St. 453: "The consideration for an agreement of separation fails and the contract is avoided when separation does not take place, or where, after it has taken place, the parties are reconciled and cohabitation is resumed."

In *Kehr v. Smith,* 20 Wall. 31, 87 U. S. 313, 22 L. Ed. 313, the court said:

"All the elements of value which entered into the composition of the first agreement ceased to exist when the parties became reconciled. The marital relations were resumed on the basis of mutual forgiveness for past misconduct, and the wife became entitled to support from her husband and to dower in his estate. These rights of the wife had been relinquished in the first contract, and this relin-

quishment was the only consideration to support it. The withdrawal of the consideration left the notes without any element of value in them, and the execution of the new contract, followed by cohabitation, placed the parties exactly where they would have been if there had been no separation. The notes thus became a voluntary gift, and it can make no difference in their character that they are reserved as a separate estate to the wife."

In *Zimmer v. Settle*, 124 N. Y. 37, 26 N. E. 341, 21 Am. St. 638, it was said:

"A wife, by reason of differences with her husband, left his house, went to reside with her father and brother, and sued for a limited divorce. After she had been gone about six months the suit was settled, and, in consideration of $400 paid by the husband, the father and brother obligated themselves to save him harmless from all further care and expense on her account. Held, that the bond was made in contemplation of a continued separation, and became a nullity when she subsequently returned to his house and lived in his family on the same footing as she had done for several years before leaving, although this was not of full cohabitancy as man and wife. Affirmed, 42 Hun. 653."

*Kehr v. Smith, supra; Roberts v. Hardy,* 89 Mo. App. 86; *Smith v. King,* 107 N. C. 273, 12 S. E. 57; *Knapp v. Knapp,* 95 Mich. 474, 55 N. W. 353.

But in this case it having been held that there was a sufficient common law marriage, and that by reason thereof, upon the death of Matteote the plaintiff in error became his widow, and the will invalidated, it follows that she was entitled to administer the estate under the statute, and in the absence of issue, to inherit as his sole heir.

The judgment is reversed.

GABBERT, C. J., and GARRIGUES, J., concur.