WARD, RESPONDENT, *v.* WARD, APPELLANT.

(No. 6,253.)

(Submitted February 14, 1928. Decided February 28, 1928.)

[264 Pac. 667.]

*Divorce—Previous Separation Agreement—When not Bar to Action—Laches—When not Unreasonable—Implied Findings.*

Equity—Findings—Failure to Request—Necessary Findings will be Implied on Appeal.
1. Under section 9369, Revised Codes 1921, where the court in an equity case was not requested to make findings it may not be put in error for failure to make them, and under such circumstances any finding necessary to suport the judgment will be implied.

Divorce—When Separation Agreement not Bar to Action for Divorce for Past Offenses.
2. Where an agreement of separation between husband and wife did not contain a covenant, express or implied, not to sue for divorce for past offenses, the existence of the agreement is not a bar to such an action.

Same—Desertion—Involuntary Separation not Bar to Action.
3. While desertion may be cured before the expiration of the period which will make it a ground for divorce, by the return of

---

2. Separation agreement as bar to action for divorce, see note in 1916C, 347, 367, 368. See, also, 9 R. C. L. 376.

3. Separation caused by misconduct, cruelty or adultery, see notes in 119 Am. St. Rep. 626; 138 Am. St. Rep. 156–158. See, also, 9 R. C. L. 363. Separation as ground for divorce, see note in 49 L. R. A. (n. s.) 1034. Separation within statute making separation a substantive ground of divorce, see note in 51 A. L. R. 763.

[81 Mont. 587.]

the erring party soliciting condonation, where the wife was guilty of desertion by causing the husband to depart from the home because of cruelty on her part and threats of bodily harm and she made no advances for reconciliation, a consequent separation was not a voluntary one, such as thereafter to bar action for divorce on that ground.

Same — Separation Agreement — Revocation — Action for Subsequent Offense not Barred by Previous Agreement.

4. Whether an agreement between husband and wife to separate was revoked is dependent upon their intention, which may be drawn from their acts and the surrounding circumstances, and while a mere temporary cohabitation will not justify the conclusion that it was their intention to revoke the agreement, a bona fide reconciliation restoring the former relations of the parties, followed by cohabitation, works a revocation of the contract, and for an offense thereafter committed by one of the parties, action by the other is not barred by its previous existence.

Same—Laches—Presumption of Condonation Rebuttable.

5. The "unreasonable lapse of time" in bringing an action for divorce on certain grounds, which under section 5762, Revised Codes 1921, bars it, is such delay in commencing suit as establishes the presumption that there has been connivance, collusion or condonation of the offense, with intent to continue the marriage relation notwithstanding the offense, but such presumption may be rebutted by showing reasonable grounds for the delay.

Same—Delay in Bringing Action Held not Unreasonable in View of Circumstances.

6. Where a delay of several years in bringing an action for divorce against the wife, on the grounds of wilful desertion, extreme cruelty and habitual drunkenness, was caused by plaintiff's desire to support defendant during a period of two and one-half years deemed necessary to effect a cure of a venereal disease with which she was afflicted, it was not so "unreasonable" within the meaning of section 5762, above, as to warrant dismissal of the action because of laches.

---

[1] Appeal and Error, 4 C. J., sec. 2728, p. 779, n. 78. Divorce, 19 C. J., sec. 344, p. 132, n. 99.

[2] Divorce, 19 C. J., sec. 189, p. 82, n. 18.

[3] Contracts, 13 C. J., sec. 407, p. 465, n. 93. Divorce, 19 C. J., sec. 190, p. 82, n. 26. Separate, 35 Cyc., p. 1379, n. 24.

[4] Divorce, 19 C. J., sec. 190, p. 82, n. 23; sec. 344, p. 132, n. 99. Husband and Wife, 30 C. J., sec. 844, p. 1064, n. 20; sec. 847, p. 1065, n. 44.

[5] Divorce, 19 C. J., sec. 226, p. 97, n. 27.

[6] Divorce, 19 C. J., sec. 226, p. 97, n. 28.

*Appeal from District Court, Silver Bow County; J. J. Lynch, Judge.*

---

4. See 9 Cal. Jur. 670.
5. See 9 Cal. Jur. 675, 691.

[81 Mont. 587.]

ACTION by Eric T. Ward against Estella Ward for divorce. Judgment for plaintiff and defendant appeals. Affirmed.

*Mr. John A. Shelton,* for Appellant, submitted an original and a reply brief and argued the cause orally.

"An unrevoked agreement for separation under which the spouses are living apart precludes either from obtaining a divorce for desertion, unless the cause of action therefor had fully accrued at the time the agreement was entered into." (19 C. J. 82; *Silva* v. *Silva,* 32 Cal. App. 115, 162 Pac. 142.) In this case, according to the claim of the plaintiff, desertion took place on July 15, 1923. However, the parties lived separate and apart under a mutual agreement and consent from September 1, 1923, forward until the commencement of the suit. In consequence the desertion had not continued for the required period at the time the suit was brought.

The terms of the separation agreement necessarily implied that the parties had agreed to excuse past marital grievances. In *Sherman* v. *Sherman,* 65 Mont. 227, 211 Pac. 321, it is said: "Such an agreement is not necessarily a bar to an action for divorce for cause then existing or arising subsequently thereto, in the absence of a covenant, express or implied, not to sue for past offenses. (19 C. J. 82; 9 R. C. L. 376.)" The extract quoted is plainly to the effect that a covenant may be implied in such a contract even though not expressly stated to the effect that the parties agreed not to sue for past grievances and that when such covenant is implied the making of such agreement is a bar to an action for divorce.

If the separation agreement is not in itself and by itself sufficient to bar an action for divorce, it is such a bar when taken in connection with the fact that there was a long lapse of time after the making of the said separation agreement before there was any suit for divorce and other circumstances of the case. Under such circumstances, the beginning of a suit for divorce by the plaintiff three years after the parties had separated under a mutual agreement and without his having discovered

in the meantime any new ground for divorce and without any pretense on his part that any of the grounds for divorce had continued after the date of such mutual separation and prior to the time when the suit was begun, is strongly indicative of bad faith on his part which should bar the divorce. (19 C. J. 82.)

The separation agreement is only a part of the bar which prevents the recovery of a divorce. The other part is the lapse of time in connection with the fact that during that time there is no evidence of any continuance of the acts which might be ground for divorce and the defendant has not discovered any new ground for divorce. The agreement for a separation having been entered into and the conduct of the defendant being thereafter and up to the time of the bringing of suit without reproach so far as the evidence discloses, the plaintiff could not have acted in good faith when he entered into an agreement for separation. If he desired a divorce and not a separation, all of the grounds then existed which he afterward asserted and the steps taken by him then should have been for a divorce if he wanted a divorce and not for a separation without a divorce. (*Squires* v. *Squires*, 53 Vt. 208, 38 Am. Rep. 668; see, also, *Franklin* v. *Franklin*, 40 Mont. 348, 106 Pac. 353.)

A suit for divorce will become barred by a much shorter delay in a case where the husband is suing than in a case where the wife is suing. (2 Schouler on Marriage and Divorce, 1882, note 19.) In *Squires* v. *Squires*, supra, a two years' unexplained delay in bringing suit was held to be unreasonable, and that in a case where the suit was by the wife.

*Mr. J. A. Poore*, for Respondent, submitted a brief and argued the cause orally.

There was no agreement of separation in this case. It was forced upon the plaintiff by the defendant's conduct, and after this desertion by the defendant it was immaterial to the plaintiff what she did or where she went—he knew he could not live with her. He agreed to send her a monthly

stipend, which he did. This does not amount to an agreement for separation. (*Roden* v. *Roden* (Ariz.), 243 Pac. 413.) Separation by consent must be voluntary, otherwise there is no consent. A separation by acts of cruelty preventing cohabitation negatives any consent.

When one party to a marriage contract terminates cohabitation by desertion, the other is not bound to take any steps to restore it. If he remains silent until he files suit, his silence does not take away his right to a decree. Conduct which in itself is proper cannot be made improper by inquiring what he would have done in an event which did not happen. The mode of testing that was for the wife to offer to return. (*Ford* v. *Ford,* 143 Mass. 577, 10 N. E. 474; also, *Ogilvie* v. *Ogilvie,* 37 Or. 171, 61 Pac. 627.) And where the menace from a disease is a continuing one, there can be no condonation. (*Hooe* v. *Hooe,* 122 Ky. 590, 13 Ann. Cas. 214, 5 L. R. A. (n. s.) 729, 92 S. W. 317; *Ryder* v. *Ryder,* 66 Vt. 158, 44 Am. St. Rep. 833, 28 Atl. 1029; *Williams* v. *Williams,* 77 Ill. App. 229; *Wilson* v. *Wilson,* 16 R. I. 122, 13 Atl. 102.)

Where the wife after desertion has so acted as to give her husband sufficient cause to suspect her chastity, he is not required to seek reconciliation. (*Sterling* v. *Sterling,* 71 N. J. Eq. 59, 63 Atl. 548; *Hall* v. *Hall* (N. J. Eq.), 53 Atl. 455; affirmed, 65 N. J. Eq. 709, 55 Atl. 300; 19 C. J. 66.)

The alleged agreement was void under our statute, first, because there was no agreement to an immediate separation (sec. 5787, Rev. Codes 1921); second, because under the record here presented it was founded upon and made necessary by her reckless disregard of the obligations of the marriage tie. (*Stebbins* v. *Morris,* 19 Mont. 115, 47 Pac. 642; *Lee* v. *Lee,* 55 Mont. 426, 178 Pac. 173.)

The fact that one spouse is found to have a venereal disease raises no presumption that it was communicated to him or her by the other. (*Holmes* v. *Holmes,* 186 Iowa, 336, 8 A. L. R. 1534, 170 N. W. 793; *Holthoefer* v. *Holthoefer,* 47 Mich. 260, 643, 11 N. W. 150; *Homburger* v. *Homburger,* 47 How. Pr. (N. Y.) 346; *Moore* v. *Moore,* 135 N. Y. Supp. 425.)

Was there an unreasonable lapse of time in commencing the action on the grounds stated in the complaint? The question as to whether the lapse of time is reasonable or unreasonable is one which the trial court must determine (*Johnston* v. *Johnston*, 21 Cal. App. 181, 131 Pac. 81; 9 Cal. Jur., sec. 60, p. 692). In the *Johnston Case* the court held that six years was an unreasonable lapse of time, in view of the fact that the plaintiff made no effort to introduce any testimony tending to show a reasonable cause for his delay.

In the case of *Neeley* v. *Neeley*, 179 Cal. 232, 176 Pac. 163, the court stated: "We would hesitate to say that an unexplained delay of three and a half years must, as a matter of law, be deemed unreasonable."

In the case of *Morgan* v. *Morgan*, 190 Cal. 522, 213 Pac. 993, a divorce was granted on the ground of excessive use of intoxicating liquors after a lapse of more than six years, a portion of which time the defendant was confined in an asylum by reason of such acts; the court holding in effect that where the delay under the facts is such that connivance, collusion or condonation of the offense, or a full acquiescence in the same, with intent to continue the marriage relation, would be presumed established from such delay, it is sufficient if the explanation of the delay negatives this presumption. (9 Cal. Jur., sec. 60, p. 691; sec. 5764, Rev. Codes 1921.)

Discussing condonation only as it is applied to "unreasonable lapse of time" in bringing the action as defined by section 5763, Revised Codes, 1921, under the circumstances appearing in this record it was necessary for the appellant to show an express agreement to condone her offenses against the marriage status, and letters of affection or cohabitation or conjugal kindness are not sufficient. (*Hunter* v. *Hunter*, 132 Cal. 473, 64 Pac. 772; *Smith* v. *Corbit*, 116 Cal. 587, 48 Pac. 730; *Morton* v. *Morton*, 117 Cal. 443, 49 Pac. 557; *Whinnery* v. *Whinnery*, 21 Cal. App. 59, 130 Pac. 1065; *Johnson* v. *Johnson*, 4 Cal. Unrep. 446, 35 Pac. 637; sec. 5756, Rev. Codes 1921; 9 Cal. Jur., sec. 56, p. 687.)

MR. JUSTICE MATTHEWS delivered the opinion of the court.

The defendant, Estella Ward, has appealed from a judgment and decree of divorce entered in the district court of Silver Bow county in favor of plaintiff, Eric T. Ward, by the terms of which plaintiff is awarded the custody of a female adopted child of the age of six years.

The plaintiff commenced action for divorce in July, 1926, and in his complaint stated three causes of action: (1) Extreme cruelty, (2) habitual drunkenness, and (3) wilful desertion; the period of wrongdoing in the first and second being from the fall of 1921 to July 1, 1923, a period of over one year, while the ground of the third cause of action is alleged to be the conduct of defendant of so violent a nature as to cause plaintiff to fear for his life or safety and to compel him to leave the family dwelling place on the date last mentioned. The complaint discloses that the defendant left the state in September, 1923, and had been absent therefrom to the time of commencing the action.

It is alleged in the complaint that there was no issue of the marriage, but that in the fall of 1922 the parties adopted a child which was in the custody of defendant; it further alleges that the plaintiff is an accountant making $350 per month and able and willing to care for the child. Plaintiff prays for a decree of divorce and the custody of the child.

By answer defendant denies the allegations of the complaint except those as to marriage, residence and the like, and by paragraph III of the answer she alleges that "plaintiff and defendant have been living separate and apart ever since the month of September, 1923, under and by virtue of a certain written separation agreement made and executed and entered into between the said parties on the first day of July, 1922, a true and correct copy whereof is attached to this complaint [answer], marked 'Exhibit A,' and made a part hereof, which said separation agreement was on or about the first day of September, 1923, orally confirmed by the parties hereto and agreed

by them to be of binding and full force and effect and the measure of the respective marital duties, obligations, liabilities, and regulation between them.'' This allegation is repeated as to each of the three causes of action stated.

In addition to the answer and as a part thereof, defendant made what is entitled, ''A further defense, counterclaim, and cross-complaint against plaintiff.'' Paragraph II thereof alleges the execution of the separation agreement above referred to, and that ''before these parties could separate this defendant became seriously ill and remained so for a period of some months thereafter, during which time the defendant lived in the home of plaintiff and defendant but did not cohabit with plaintiff as his wife; that thereafter and on or about the first day of September, 1923, in conformity with said written agreement and upon the oral, express agreement and understanding between the parties that said written agreement should be adopted by them and remain in full force and effect, according to the terms thereof, said plaintiff and defendant did separate, defendant with the consent, at the will of, and by the request of plaintiff removed to California and there resided until served with process in this action; that said written agreement as adopted by said parties in said oral agreement has at all times remained in full force and effect and does now remain in full force and effect; that said plaintiff did comply with the terms thereof until about April, 1926, at which time he did breach same and now seeks to repudiate said agreement.''

By paragraph II of a ''second and separate defense'' defendant charges plaintiff with extreme cruelty. She prays that the separation agreement be declared in full force and effect, or that she be awarded separate maintenance, custody of the child, and an award for its support.

The affirmative matter alleged by defendant was denied by reply.

The cause was tried to the court without a jury, and a large volume of testimony was received. Without reciting the sordid details, the testimony on the part of the plaintiff discloses the wrecking of a home and the destruction of the

peace of mind and happiness and the final driving from the home of one party to a marriage contract by the habitual intemperance and evil associations of the other, with the usual attendant circumstances of abuse, assaults and threats and attempts to kill. The only variation from the usual showing in this class of cases is that the wife was the erring spouse, and the husband the long-suffering one. It further shows that in the spring of 1922 defendant assured plaintiff that if she had a baby to care for she would mend her ways, and the couple thereupon adopted a little girl a month old, but it did not have the desired effect; in the fall she thought that if she had a car in which to get out in the open air she could overcome her faults, so the plaintiff bought her a car, but it seemed only to extend her range of carousing, and to endanger the life of the child as well as her own, and to bring her into contact with dissolute characters, until the car was finally stolen by two of her new friends, Walsh and Hughes, later convicted of murder while committing robbery in Jefferson county.

In July, 1922, the separation agreement was entered into, by the terms of which the parties agreed to live separate and apart, and plaintiff agreed that defendant should have the car and household effects, without affecting her dower right or right of inheritance, and that he would pay her $150 per month for the support of herself and the child. The plaintiff immediately removed to rented rooms, but within a month defendant 'phoned him to come to the house and talk matters over; the conference resulted in a reconciliation and the return of the plaintiff on the express promise of defendant to "quit drinking" and "quit carousing around" and "to be a good wife," but it soon "happened unto them according to the true proverb the dog turned to his own vomit again; and the sow that was washed to her wallowing in the mire." (II *Peter*, 2–22.) However, the couple continued to live together for nearly a year when, on July 15, 1923, and because of the

cruelty and threats of the defendant, plaintiff departed from the family residence and never thereafter returned.

The defendant admitted becoming intoxicated on occasion, but claimed that it only took three drinks to produce that condition, and denied that she was in that condition as frequently as was claimed by plaintiff.

On September 1, 1923, defendant told plaintiff that she must go to California in an effort to recover her health, then badly shattered. According to plaintiff, he told her that, as they could no longer live together, it was immaterial to him where she went, and that he would continue to pay her all he could afford for her support and that of the child; he then gave her $1,250 which he had received on a policy of insurance on the stolen car. He denied that they then had any conversation concerning any separation agreement. Defendant testified that, at that time, she suggested that, as they had lived in the same house after executing the agreement of July, 1922, they should have a new agreement, and plaintiff told her that the original agreement was sufficient and that, on his word of honor, he would comply with it, and did so up to April, 1926.

In December, 1923, defendant wrote plaintiff that a specialist had advised her that she was afflicted with syphilis, but assured her that he could effect a cure in time. Plaintiff then ascertained from a local physician that a cure would require from two to two and one-half years and "a lot of money"; he decided that he was morally bound to see her through that period and continued to send her from $125 to $150 per month, and, at one time, on receipt of an urgent request by wire, borrowed $500 for her which she spent in the purchase of a second-hand automobile, in order to get out in the air. The maximum period fixed for a cure having expired in June, 1926, plaintiff wrote defendant that "the time has come when I cannot go any further with our present arrangement" and stated that he was going to apply for a decree of divorce, but would bring it on "some ordinary ground" and give her the child with $50 per month for its support if she would agree;

he requested her to either wire or write him at once. Defendant did not take kindly to the suggestion, but returned to Butte to contest the divorce proceeding.

Plaintiff had no knowledge or information regarding defendant's conduct while in California and testified that, up to shortly before the trial, he was willing that she should keep the child although he had doubts as to her fitness, but changed his mind on learning that after returning to Butte defendant had been arrested for driving her car while in an intoxicated condition, at which time she had the child with her. Testimony as to this final escapade was admitted solely for the purpose of determining defendant's fitness to have the custody of the child.

At the close of the trial plaintiff's counsel orally requested that findings of fact be made; counsel for defendant made no such request either in writing or orally. On the evidence adduced the court made findings to the effect that for the period beginning in the fall of 1921 and ending July 15, 1923, the defendant had been guilty of all of the acts of extreme cruelty charged and had been guilty of habitual drunkenness, all of which acts were persisted in for more than one year, but that defendant had been guilty of none of such acts or conduct for a period of one year immediately preceding the commencement of the action, or after July 15, 1923.

As to the charge of desertion, the court found that the conduct of the defendant was such as to compel the plaintiff to depart from the family dwelling place, and since that time he had lived separate and apart from the defendant.

With reference to the "separation agreement," the court found that it was entered into on or about July 1, 1922, but that the plaintiff and defendant "lived separate and apart thereunder for a period of only about one month and thereafter cohabited and resumed the marital relation."

The court further found that the allegations of paragraph II of defendant's separate defense are "not true."

On the question of the relative fitness of the parties to have the custody of the child, the court finds "that the plaintiff is sober, industrious, and well-behaved and is a fit and proper person to have the care, custody, and education of said child, but that the defendant, by reason of her drunken habits and immoral conduct, is not a fit and proper person to have the care, custody, and education of said child."

On the findings made the court predicated its conclusions of law to the effect that defendant has been guilty of each of the charges made against her for a period of more than one year, and that the plaintiff is entitled to a decree of divorce awarding him the custody of the child. The court further concluded that "the separation agreement between the parties, if it ever had any binding force, was avoided on or about the first day of August, 1922, by their cohabiting and resuming the marital relation then and thereafter." On the filing of the findings and conclusions of law, defendant filed exceptions to each thereof, other than those referring to the period from July 15, 1923, to the commencement of the action, which were favorable to her. These exceptions were overruled and a decree was duly entered severing the bonds of matrimony and awarding plaintiff the custody of the child. From this judgment defendant has appealed. Eight specifications of error are predicated upon the overruling of defendant's exceptions to the findings of fact and conclusions of law, which exceptions were based upon the contention that the findings made are not supported by the evidence. Five specifications are predicated upon findings made, and two upon the alleged failure of the court to make findings upon the issues joined and the testimony of defendant that the separation agreement was "orally confirmed" on September 1, 1923, as alleged in paragraph III of the answer and paragraph II of the "further defense." The final specification is that the court erred in entering the judgment.

In arguing the assignments, counsel for defendant abandons the ground upon which the exceptions to the findings are

based. This is, perhaps, due to the fact that the case was defended by one attorney and the appeal taken by another.

In argument counsel states that "the contention of the defendant is not in any way founded upon the theory that there was not evidence in the record which would, if considered separately and without regard to other parts of the record, have justified the court in finding that the defendant had been guilty of habitual intemperance and that the defendant had treated the plaintiff with extreme cruelty." Counsel contends that, under the circumstances shown to have existed, the evidence should not have been considered, but if it was open to consideration he "would not attempt to avoid its legitimate effect." He asserts that the evidence of misconduct on the part of defendant has no bearing upon the errors presented for review.

The positions taken by counsel on this appeal are: (1) That the separation agreement of July 1, 1922, barred an action for divorce on grounds existing theretofore; (2) that the desertion of July 15, 1923, lasted but for a month and a half and was ended by the oral "confirmation" of the agreement on September 1, 1923, or by a new oral separation agreement which was entered into on this last date and was thereafter fully executed and complied with up to April, 1926; (3) that if the separation agreement is not, of itself, sufficient to bar the action, taken in connection with the lapse of time shown by the evidence, it is sufficient as showing bad faith; (4) that independent of the separation agreement, the action was barred by the unreasonable lapse of time before bringing the action.

1. Counsel first argues that the court erred in failing to [1] make any finding on the issue joined as to the confirmation of the separation agreement on September 1, 1923; he stated that "the court was duly requested to make findings, but failed entirely to make a finding as to this issue," and argues that, therefore, this court should make an independent finding on the subject.

Counsel is in error in stating that the court was duly requested to make findings and is again in error in asserting that he can now take advantage of the court's failure to make a finding on this issue, if there was such a failure.

Section 9369, Revised Codes of 1921, declares that "no judgment shall be reversed on appeal for want of findings at the instance of any party who, at the close of the evidence and argument in the cause, shall not have requested findings in writing, and had such request entered in the minutes of the court." The statute imposed upon the defendant the duty of submitting proposed findings in writing and having the request therefor entered on the minutes of the court. The trial court cannot be put in error for failure to make a finding not requested and, under such circumstances, any finding necessary to support the judgment will be implied. (*Edwards* v. *Muri*, 73 Mont. 339, 237 Pac. 209.)

We must therefore imply a finding, in conformity with the decree, to the effect that the allegations concerning a revival or confirmation of the separation agreement, or the entering into of an oral agreement, contained in paragraph II of the answer and paragraph III of the affirmative defense, are not true; such an implied finding is warranted by plaintiff's testimony.

2. There is no merit in the contention that the separation [2] agreement barred an action for divorce on ground theretofore existing. There is nothing in the agreement even suggesting a condonation of past offenses; on the contrary, it is apparent that the parties separated because plaintiff could no longer endure defendant's reckless disregard of her marriage vows and marital duties. This condition rendered the separation agreement valid, on immediate separation, so long as nothing further was done by either of the parties, but did not, of itself, bar either of them from instituting an action for divorce even while it was in full force and effect, as there was therein no covenant, either express or implied, not to sue for past offenses. (Sec. 5756, Rev. Codes 1921; *Stebbins* v. *Morris,*

19 Mont. 115, 47. Pac. 642; *Lee* v. *Lee,* 55 Mont. 426, 178 Pac. 173; *Sherman* v. *Sherman,* 65 Mont. 227, 211 Pac. 321; 19 C. J. 82,' and cases there cited.)

3. Counsel for defendant asserts that the parties "separated [3] under mutual agreement" on September 1, 1923, and therefore a cause of action on the ground of desertion does not exist.

Section 5741, Revised Codes of 1921, provides that "separation by consent, with or without the understanding that one of the parties will apply for a divorce, is not desertion." However, to "separate" means "to part from each other." (*Stoddart* v. *Stoddart,* 11 Chic. Leg. News (Ill.) 162.) On September 1, 1923, the parties had already separated, and it must be remembered that the "desertion" which took place on July 15, 1923, was not the voluntary separation of the wife from her husband with the intent to desert (section 5739), but the departure of the husband from the home caused by the cruelty and threats of bodily harm on the part of the wife (section 5740). While desertion may be cured before the expiration of the period which will make it a ground for' divorce, by the return of the erring party, offering in good faith to fulfill the marriage contract and soliciting condonation (section 5744), it was the wife who was the erring party and who should have made the advances; nothing of this sort was done; all that she sought was the means to make the trip to California and support for herself and the child in that state—a continuation of the support which the plaintiff had voluntarily afforded her during her desertion of him. While the plaintiff did pay to defendant approximately the same amount monthly from the time of her desertion up to April, 1926, he was merely paying all that he could from his salary in an effort to aid the woman who bore his name and was still his wife to regain her health, although, as she had deserted him, he could not have been compelled to do so.

4. Authorities cited by counsel for defendant, to the effect [4] that an "unrevoked" agreement for separation under

which the parties live apart precludes action for divorce on the ground of desertion unless the cause had fully accrued before the agreement was entered into, have no application here, as, under the court's finding, supported by sufficient evidence, the only agreement ever entered into between these parties was revoked, or "invalidated," by their cohabitation and resumption of the marital relation on or about August 1, 1922, and the desertion dates from July 15, 1923.

While the revocation of such an agreement depends upon the intent of the parties, their intention may be drawn from their acts and the surrounding circumstances, and, while a mere temporary cohabitation of the parties will not justify the conclusion that they intended to revoke the separation agreement (2 Schouler on Marriage and Divorce, 1561; *Dennis* v. *Perkins,* 88 Kan. 428, 43 L. R. A. (n. s.) 1219, 129 Pac. 165; *Estate of Martin,* 166 Cal. 399, 137 Pac. 2), the consideration for the separation fails and the contract is avoided, where, after it has taken place, a bona fide reconciliation which restores the former relations of the parties is effected and is followed by cohabitation (*Galusha* v. *Galusha,* 116 N. Y. 635, 15 Am. St. Rep. 453, 6 L. R. A. 487, 22 N. E. 1114; *Brown* v. *Brown,* 170 Cal. 1, 147 Pac. 1168; *In re Matteote's Estate,* 59 Colo. 566, 151 Pac. 448; *Hartl* v. *Hartl,* 155 Iowa, 329, 135 N. W. 1007).

The court was justified, on the evidence adduced, in declaring that the contract under consideration was avoided.

We find nothing in the record justifying the assertion that, by reason of delay in commencing the action, plaintiff was guilty of bad faith with reference to the separation agreement.

5. It is finally contended that the plaintiff lost his right [5, 6] to prosecute this action by his delay in bringing the action.

Under our Code there are no limitations of time for commencing actions for divorce, except such as are contained in section 5762. (Sec. 5765.) Section 5762 limits the time to

[81 Mont. 587.]

two years when the ground is either adultery or the conviction of a felony, and provides that, "in all other cases where there is an unreasonable lapse of time before the commencement of the action," a divorce must be denied. The "unreasonable" lapse of time is such delay in commencing the action as establishes the presumption that there has been connivance, collusion or condonation of the offense or full acquiescence of the same, with intent to continue the marriage relation, notwithstanding the commission of the offense (sec. 5763), and this presumption may be rebutted by showing reasonable grounds for the delay (sec. 5764).

Here the plaintiff showed "reasonable ground" for his delay, to-wit, his humanitarian instinct not to leave defendant destitute at a time when she was not able to support herself or to regain her health without his continued aid. For this laudable course of conduct, plaintiff should not now be penalized by the dismissal of his action, commenced immediately after the period fixed as necessary to effect a cure of defendant's disease. Such a delay is not such "unreasonable delay" as is contemplated by the provisions of section 5762 above.

6. As all of the findings made and those which must be implied are supported by the evidence, which is in sharp conflict and presents reasonable grounds for differing opinions, and the findings warrant the judgment entered, no error was committed in its entry.

The judgment is affirmed.

*Affirmed.*

MR. CHIEF JUSTICE CALLAWAY and ASSOCIATE JUSTICES MYERS, STARK and GALEN concur.