No. 80-71

IN THE SUPREME COURT OF THE STATE OF MONTANA

1980

---

IN RE THE MARRIAGE OF
RAYMOND C. MILLER,

Petitioner and Respondent,

vs.

ARLENE MILLER,

Respondent and Appellant.

---

Appeal from:   District Court of the Seventeenth Judicial District,
               In and for the County of Valley.
               Honorable M. James Sorte, Judge presiding.

Counsel of Record:

    For Appellant:

        Oleson Law Firm, Kalispell, Montana

    For Respondent:

        Langen and Nielsen, Glasgow, Montana

---

Submitted on briefs: July 11, 1980

Decided: AUG 27 1980

Filed: AUG 27 1980

_Thomas J. Kearney_
_____
            Clerk

Mr. Justice John Conway Harrison delivered the Opinion of the Court.

This is an appeal from a denial to reopen and vacate a judgment in a divorce action in the District Court of the Seventeenth Judicial District, County of Valley.

A separation agreement was signed and filed with the District Court by the parties October 22, 1976. On March 28, 1978, respondent, Mr. Miller, finalized the divorce by obtaining a decree for dissolution. Appellant, Mrs. Miller, argues that this was done without notice to her of entry of judgment and that she only received a copy of the final decree after it had been obtained.

In August 1978, Mrs. Miller moved to reopen or vacate the judgment. The motion was denied on the grounds that it offended Rule 60, M.R.Civ.P. On September 26, 1978, Mr. Miller filed a motion for partition of real estate. After hearing, the Honorable M. James Sorte issued an order on December 21, 1978, indicating that he would only consider property acquired by the parties between October 22, 1976 and March 28, 1978. A motion for reconsideration was filed by appellant on June 8, 1979, but was never ruled upon.

A hearing to determine the rights of the parties in real estate acquired between the time of the separation agreement and the final decree was conducted on August 24, 1979. An order including findings of fact, conclusions of law and judgment and decree was entered on December 13, 1979. Mr. Miller filed a notice of entry of judgment one week later.

The Millers were married on November 13, 1974, and moved to Richland, Montana, where Mr. Miller had resided prior to the marriage. Two years later, on October 22,

1976, after serious marital problems had developed between them, the Millers executed and filed a separation agreement.

Thereafter Mrs. Miller moved to Kalispell, Montana. Mr. Miller followed her, and for sixteen months there were attempts to reconcile, resulting in at least a periodic marital relationship. During this reconciliation period, the Millers purchased two acres of land near Kalispell as the site of Mrs. Miller's trailer. The resumption of the marital relationship involved short periods wherein the parties lived together as husband and wife. Further, for the years of 1976 and 1977, the Millers filed joint income tax returns.

On March 28, 1978, Mr. Miller obtained a divorce and a default judgment against Mrs. Miller. On August 10, Mrs. Miller filed a motion to reopen or vacate the judgment. Mr. Miller then moved to partition the real property. After hearing on the motions on October 6, 1978, and a final hearing on August 24, 1979, the court entered the December 13, 1979, decree which is now appealed.

The following issues are raised for our consideration:

1. What effect did the parties' attempt to reconcile have on the separation agreement?

2. Can marital property be distributed in separate hearings without either hearing involving the totality of the property?

3. Is the dissolution of the marriage divisible from the other aspects of the decree?

4. Was there extrinsic fraud on the part of respondent so as to deny appellant her "day in court"?

5. Was the court's final action an "action in real property," and if so, was the trial properly conducted under section 25-2-103, MCA?

The record discloses that in the sixteen months between the filing of the separation agreement and the date of the final decree of dissolution, the Millers attempted a reconciliation. The first issue presented, therefore, is really twofold: Was there a reconciliation, and did it revoke the separation agreement?

Reconciliation is the voluntary resumption of a marital relationship in the fullest sense, and is a state of mind to be determined by the evidence. Keller v. Keller (1932), 122 Cal.App. 712, 10 P.2d 541. The incidents of reconciliation, and the evidence of it, generally include cohabitation where possible, sexual relations, and the maintenance of joint affairs as husband and wife. In 1927, in the case of Ward v. Ward (1927), 81 Mont. 587, 264 P. 667, this Court acknowledged that the revocation of such an agreement is determined by the intent of the parties. However, the intention must be to resume married life completely and entirely, and not to merely enjoy each other's society temporarily, for limited purposes, or as a trial to see if the parties want to continue as a married couple. Temporary cohabitation is not sufficient evidence of a mutual intent to revoke the separation agreement. Ward v. Ward, 81 Mont. at 602, 264 P. at 672.

In the case before us the facts are not conclusive as to the existence or nonexistence of a reconciliation. Mrs. Miller testified that she and Mr. Miller spent at most three months together between December 1976 and April 1978. However, they filed joint income tax returns and purchased the Flathead County property together. We take note of the fact that this periodic state of matrimony may have been sufficient under the circumstances in light of the time demands placed on Mr. Miller to conduct his Richland business. The District Court found there was a reconciliation.

-4-

It is the effect of the reconciliation which is at the heart of the issue at bar. We are confronted with the characteristics of both a separation agreement and a property settlement agreement inseparably mixed in one instrument. A reconciliation may have a certain effect upon a separation agreement and quite another on a settlement agreement. Annot., 35 A.L.R.2d 707, 711 (1954). The principal functions of a separation agreement are to stipulate that the parties may lawfully live separate and apart and to provide for the support of the wife and the custody and support of children. Acre v. Koenig (1965), 89 Idaho 342, 404 P.2d 621, 623. On the other hand, the function of a property settlement is to make a full and final disposition of the parties' rights with respect to joint and separate property. Annot., 35 A.L.R.2d at 711. We are persuaded by the reasoning in Potts v. Potts (1975), 24 N.C.App. 673, 211 S.E.2d 815, wherein the court held that reconciliation and resumption of the marital relationship, and all the incidents thereof, will have no effect upon those provisions of the agreement which have already been executed.

In the case before us, the Millers had executed all the terms of the agreement relating to the disposition of property owned by them as of October 22, 1976. In such a case it would require an express intent to revoke, manifested by clear and unmistakable action, to void the original agreement. We conclude that when the terms of an agreement have been executed, and the agreement does not disclose overreaching by either party, the instrument is binding as to both in the absence of a new agreement.

-5-

If the parties did reconcile, that reconciliation had no effect on the provisions which had been completely fulfilled. For this Court to hold otherwise would be an affront to the policies of the Uniform Marriage and Divorce Act which encourage the amicable settlement of disputes and an improper infringement on the individual rights of persons to determine their own affairs.

Appellant's reliance on our decision in Metcalf v. Metcalf (1979), ___ Mont. ____, 598 P.2d 1140, 36 St.Rep. 1559, is not well founded in its application to her appeal. In Metcalf we upheld the well-settled rule that a trial court is obligated to determine the net worth of the parties at the time of their divorce. See also Grenfell v. Grenfell (1979), ___ Mont. ___, 596 P.2d 205, 207, 36 St.Rep. 1100, 1103. However, the presence of a valid separation agreement is fatal to the applicability of the Metcalf rule. The trial judge must also honor the statutes of the State of Montana and is directed in section 40-4-201, MCA, as follows:

> "(1) To promote amicable settlement of disputes between parties to a marriage attendant upon their separation or the dissolution of their marriage, the parties may enter into a written separation agreement containing provisions for disposition of any property owned by either of them, maintenance of either of them, and support, custody, and visitation of their children.
>
> "(2) In a proceeding for dissolution of marriage or for legal separation, the terms of the separation agreement, except those providing for the support, custody, and visitation of children, are binding upon the court unless it finds, after considering the economic circumstances of the parties and any other relevant evidence produced by the parties, on their own motion or on request of the court, that the separation agreement is unconscionable." (Emphasis added.)

Unconscionability was never at issue at any time during the proceedings. When the District Court complies with such

-6-

a direct statutory mandate, there can be no error. This Court takes note of the age of the agreement at the time of its incorporation into the final decree. But we will not substitute our conclusions for those of the District Court in the absence of clear and reversible error. In re Marriage of Kramer (1978), 177 Mont. 61, 580 P.2d 439, 442, 35 St.Rep. 700, 704. We conclude that marital property can be distributed in separate hearings without either hearing discussing the totality of the marital estate where there is mutual agreement as to its disposition. The rule is well reasoned that persons must be able to separate amicably and divide their property without interference where such division is feasible. It is not the province of this Court to alter decisions and agreements made between husband and wife in the absence of compelling injustice.

Appellant is correct in contending that the net worth of the parties is a necessary consideration; however, if there is a signed and executed separation agreement, we must conclude that the parties themselves have already made a determination of their net worth as a basis for their decision.

Appellant contends that the District Court erred in separating the dissolution aspect of the decree from the property disposition of the Flathead County property. Argued conversely, the claim is that property distribution must take place within the same order, the decree being an unseverable instrument. The issue has no merit.

Disposition of such a question can be accomplished by referring to the statutes of Montana, the Uniform Marriage and Divorce Act. Section 40-4-104, MCA, recites in applicable part:

"(1) The district court shall enter a decree of dissolution of marriage if:

". . .

"(d) to the extent it has jurisdiction to do so, the court has considered, approved, or made provision for child custody, the support of any child entitled to support, the maintenance of either spouse, and the disposition of property or provide for a separate, later hearing to complete these matters." (Emphasis added.)

Clearly, the legislature intended to grant the District Court the power to sever the decree to whatever extent necessary to resolve disputes efficiently.

The District Court must be free to dispose of those portions of the decree that are in a condition to be decided. We are persuaded by the comments to the Uniform Marriage and Divorce Act:

"The phrase, 'considered, approved, or provided for,' in subsection (a)(4) is intended to confer upon the court the authority to refuse to make any award, if the evidence justifies an outright denial, as well as the authority to make such allotment as the facts require. To avoid any doubt, the court is authorized expressly to provide for a later hearing to complete action on these matters, if necessary." Uniform Laws Annot., §302, Commissioner's Comment (1973), Vol. 9A at 123. (Emphasis added.)

We conclude, therefore, that the interests of justice and judicial economy are best served by giving District Courts broad discretion in the conduct of their proceedings and the severance of the various elements of dissolution decrees.

Mrs. Miller assigns two claims of extrinsic fraud against Mr. Miller. Extrinsic fraud is that which denies an adversary the opportunity to have a trial or fully present her side of the case. Selway v. Burns (1967), 150 Mont. 1, 429 P.2d 640. Cases decided by this Court reveal that the prohibited result of denying the other party access to a fair trial may be achieved by affirmatively misrepresenting

facts (State ex rel. Sparrenberger v. District Court (1923), 66 Mont. 496, 214 P. 85) or by concealment of facts by a person who had a legal duty to disclose those facts (Hoppin v. Long (1925), 74 Mont. 558, 580, 241 P. 636). Further, it has been this Court's longstanding rule that we have the inherent power in equity to grant relief from judgments obtained by extrinsic fraud. Bullard v. Zimmerman (1930), 88 Mont. 271, 292 P. 730. However, for this Court to set aside a District Court judgment, the fraud complained of must be extrinsic or collateral and in no way intrinsic to the merits of the case. Khan v. Khan (1940), 110 Mont. 591, 105 P.2d 665.

The first allegedly fraudulent exercise upon appellant was Mr. Miller's statement to the court during dissolution proceedings on March 28, 1978. During those proceedings Judge Sorte asked Mr. Miller if the separation agreement included and disposed of all of the Millers' marital property. Mr. Miller replied that it did not include the Flathead County property acquired by the parties in the sixteen-month period between October 1976 and March 1978. Appellant challenges that statement as being extrinsic fraud upon the court because her husband failed to acknowledge the receipts from the course of his farm and ranch business in the Richland area and contends that he had a legal duty to do so.

We are directed by the language set down in Caldwell v. Taylor (1933), 218 Cal. 471, 23 P.2d 758, 760, which this Court adopted in Minter v. Minter (1936), 103 Mont. 219, 62 P.2d 233. In Minter we found that "a showing of fraud practiced in the trial of the original action will not suffice." 103 Mont. at 230, 62 P.2d at 236. Such fraud is intrinsic and does not warrant relief. Moreover, we are not

convinced that Mr. Miller's statements or concealments, whether by mistake or design, in any material way thwarted appellant's ability to present her case. On the record we see no connection between the concealment and any injury to the consideration of Mrs. Miller's case. His alleged fraudulent concealment is the "very warp and woof of the case itself" and, as such, could at best only constitute intrinsic fraud which does not afford this Court the grounds to disturb the District Court decree. Minter, 103 Mont. at 230, 62 P.2d at 236.

The other claim of fraud charges Mr. Miller with fraudulently inducing the Valley County Clerk of Court to enter a default judgment against Mrs. Miller which stated on the printed form, "having failed to appear." Appellant contends that she did make a general appearance when she filed an admission of service dated October 22, 1976. In that document appellant stated that she did "hereby voluntarily enter her general appearance." The conclusion she asks this Court to draw is that by obtaining a default, on a preprinted form with the phrase "having failed to appear" on it, she was deprived of her "day in court" by means of extrinsic fraud. We do not draw that conclusion.

If appellant relies on that portion of her admission of service, she is constrained by the whole of it. In that document there is language which reads:

> "Respondent has been fully and fairly advised in the premises, and with full knowledge, declines to answer or otherwise plead in such action and consents that her default may be entered therein, and that said cause may be set down for trial at the convenience of the court, and waives notice of such setting and any and all other notices or process required by law in the premises."

By signing the above instrument, Mrs. Miller did more to deprive herself of her "day in court" than did any action of Mr. Miller.

We are not persuaded that the inaccuracy on the default form constituted fraud. Moreover, even assuming for the sake of argument that this were fraud, there is nothing in the record or in appellant's argument which discloses that this incorrect phrase had any impact whatsoever on Mrs. Miller's case or her opportunity to present it. We must conclude, as we did in Dudley v. Stiles (1963), 142 Mont. 566, 386 P.2d 342, that such a small error cannot amount to fraud on the court, and we are restrained from exercising our equitable prerogatives.

Mrs. Miller asserts that the order determining the rights of the parties in the Flathead County property was a "partition" of real property and that those rights must be determined by a Flathead County District Court pursuant to section 25-2-103, MCA. She concludes that the Valley County District Court is "totally without jurisdiction to hear and decide such a partition action." We disagree.

First of all, the statute to which appellant refers is a _venue_ statute, not a statute establishing or restricting _jurisdiction_. See sections 3-5-301 et seq., MCA. Clearly, any District Court in this state has jurisdiction over a civil cause of action such as this. Although section 25-2-103, MCA, states that actions involving real property must be tried in the county where the property is situated, that statute is in _pari materia_ with section 25-2-201, MCA, and the two statutes must be read together to determine the true intent of the legislature. State ex rel. Foster v. Mountjoy (1928), 83 Mont. 162, 271 P. 446. See also section 1-2-102, MCA. Section 25-2-201, MCA, recites in applicable part:

> "The court or judge must, _on motion_, change the place of trial in the following cases:
>
> "(1) when the county designated is not the proper county; . . ." (Emphasis added.)

-11-

Montana has long followed the rule that although a District Court may not be the proper court because of venue considerations, the court can nevertheless try the case if there is no objection from the parties. This Court is guided by our decision in Bullard v. Zimmerman (1928), 82 Mont. 434, 443, 268 P. 512, 516, wherein we held:

> "Thus, we see, with certain exceptions, of which this suit is not one, an action in a matter over which the district court has jurisdiction may be brought in any county of the state and may be tried where brought, unless sent elsewhere upon demand of defendant or by agreement . . ." (Emphasis supplied.)

The record in this case does not disclose any motion for a change of venue which would have required the Valley County court to transfer the case to Flathead County. We conclude that the judge in Valley County had jurisdiction to hear this matter, and we refuse to decide whether that court was the proper forum for the trial. The issue on appeal is moot and will not be considered.

We call the attention of the parties and the court to the instrument transferring the Flathead County property. The instrument is a commonly used joint tenancy deed which grants to the parties equal shares in the property and a right of survivorship. It is well settled in Montana that a right of survivorship accompanies all joint tenancy interests in real property. Hennigh v. Hennigh (1957), 131 Mont. 372, 377, 309 P.2d 1022. If the intent of the court is to grant to each party an undivided one-half interest, some additional order or instrument will have to be executed. The Millers are not tenants in common, and there exist certain restraints on the free alienation of the property by either. Neither party has complete control over their interest even though they have equal interest. The joint tenancy

-12-

deed, beyond giving the parties equal interests, has limited their individual rights in the property. Section 70-1-307, MCA. See First Westside National Bank of Great Falls v. Llera (1978), 176 Mont. 481, 580 P.2d 100, 35 St.Rep. 717.

In conclusion, we must affirm the District Court decision in all respects. We are of the view that the reconciliation could not affect an agreement that had already been executed. Further, we can find no serious inequity in the agreement that would justify our interference in the mutual agreement of the Millers. The District Court did not err in making two separate dispositions. Although we do not favor such a piecemeal distribution, in cases of valid separation agreements which do not dispose of all marital property, we must respect the District Court's discretion and the integrity of mutual agreements. We find the same reasoning persuasive with respect to separating the dissolution from other aspects of the decree. As to the issue of extrinsic fraud, we find no fraud which would justify disturbing the District Court judgment. Finally, the Valley County District Court clearly had jurisdiction, and if venue was improper, the court was not required to transfer the case without a demand from appellant. No motion was made, and, therefore, the objection is not reviewable by this Court.

Affirmed.

_____
Justice

-13-

We concur:

_Frank I. Haswell_
Chief Justice

_Tim B Daly_

_Daniel J. Shea_

_John C. Sheehy_
Justices