484 P.2d 1053

Paul I. MALCOFF and Edna B. Malcoff,
his wife, Appellants,

v.

Lloyd COYIER, Appellee.

I CA–CIV 1292.

Court of Appeals of Arizona,
Division 1,
Department A.

May 18, 1971.

Review Denied July 7, 1971.

Locklear & Wolfinger, by H. J. Wolfinger, Prescott, for appellants.

Head, Cline & Toci, by Philip E. Toci, Prescott, for appellee.

DONOFRIO, Judge.

This is an appeal from an order denying appellants' (defendants in the trial court) motion for a judgment notwithstanding the verdict, or in the alternative for a new trial.

The appellee, Lloyd Coyier, who was the plaintiff in the trial court, filed a complaint against defendants, Paul I. Malcoff and his wife, based upon an oral agreement involving the sale of certain real estate in Yavapai County. The matter was tried to a jury which returned a verdict in favor of plaintiff. The court entered a judgment in accordance with the verdict. We will refer to the parties as they were designated in the trial court.

The facts briefly are that the defendants were the owners of 160 acres of land east of the town of Prescott upon which in early years there had been some mining activity. Defendants in July 1963 approached plaintiff, who had some previous mining experience, to assist them in developing the land by mining upon it. The idea was that this would increase the value of the land and also assist in stimulating a sale as the defendants were desirous of selling the property. Plaintiff's evidence was that he agreed with defendants to develop the property by mining it and thus assist in making a sale for a higher price than $20.-00 per acre. The $20.00 per acre was a price that had once been offered to them for the land. Plaintiff testified that in consideration of his agreement and efforts defendants agreed to pay plaintiff 25% of the proceeds of any sale made of the land in excess of a selling price of $20.00 per acre. Plaintiff's evidence was also to the effect that defendants agreed to reimburse him for expenses incurred by him in the development of the property. The evidence shows that between July 1963 and August 1964 when the property was sold, considerable work involving the mining operations on the property was performed. The greater part of this work was done by plaintiff or under his direction. Plaintiff also expended sums of money to open up and develop the property for these operations.

In August 1964 defendants made a sale of the land to VI Enterprise, Inc. for a price greater than the $20.00 per acre, namely, $500 per acre. The sale was evidenced by a contract calling for payments by installments through the title company. Plaintiff sues for his share under the alleged oral agreement.

The jury's verdict in favor of plaintiff was that plaintiff was entitled to "one-fourth share of the purchase price of the property of anything received by the Malcoffs in excess of $20.00 per acre." The judgment was based upon the amounts received and to be received on this contract of sale.

Defendants denied the contract alleged by plaintiff and contended that the parties only agreed to conduct a small mining operation, dividing the gold among themselves and certain other persons who were involved, and that such a division was made but plaintiff declined to accept his share.

The crucial issue which is raised by this appeal is whether there is sufficient evidence to support a valid enforceable contract.

Plaintiff questions the timeliness of the issues now raised by defendants in their brief. He contends that throughout the pleadings and trial defendants denied the existence of the agreement set forth by plaintiff, and instead urged that a totally different agreement was made, namely, an agreement to mine the property and to divide the gold which was obtained from the mining operation. Plaintiff also contends that at no time during the trial did defendants raise the theory that the contract alleged by the plaintiff in his complaint and in support of which plaintiff offered the evidence of numerous witnesses, lacked mutuality of obligation or consideration or was so vague and indefinite as to be unenforceable as a matter of law.

Although plaintiff questions the timeliness of these issues, we believe that in view of the fact that throughout the trial defendants denied the existence of a contract, we must examine the record in the light of these issues to determine if there is sufficient evidence to support a valid enforceable contract.

Plaintiff's complaint and the theory of his cause of action is based on an alleged express contract entered into orally between the parties whereby plaintiff was to do certain things such as developing and promoting the involved property to enhance its value and thus assist in effecting a sale of the land for a higher price than $20.00 per acre; that in return for plaintiff's efforts defendants were to pay him

one-fourth of the proceeds of any sale made of the land in excess of $20.00 per acre.

We start with the premise that a contract is an agreement which creates an obligation; that mutual consent is a requisite to the creation of a contract, and that it becomes binding when a proposition is made on one side and accepted on the other. An express contract was defined by our Supreme Court in Alexander v. O'Neil, 77 Ariz. 91, 267 P.2d 730:

" * * * An express contract is ordinarily thought of as an actual agreement reached by parties who have openly uttered or declared the terms thereof at the time of making it, either orally or in writing. The fundamental requisites of such a contract are an offer, an acceptance, a meeting of the minds, and a quid pro quo. * * *" 77 Ariz. at 97, 267 P. 2d at 734.

The very existence of the contract itself, the meeting of the minds, the intention to assume an obligation, and the understanding are to be determined in case of doubt, not only from the words used, but also from the situation, acts and conduct of the parties, and from the attendant circumstances. 17 Am.Jur.2d, Contracts § 1.

We agree that it is essential to an enforceable contract that there be a consideration or a mutuality of obligation; that its terms be sufficiently clear so that one can state with certainty the obligation involved. If the terms are ambiguous and uncertain there is no contract unless by the performance of the parties it is shown and indicated that there was a meeting of the minds and a mutual understanding of agreement. The burden is upon the plaintiff to prove all the essential elements of a valid contract.

Bearing the fundamentals in mind, we have gone over the record in this case and have come to the conclusion that the judgment finding a valid enforceable contract is reasonably supported by the evidence.

The testimony of plaintiff alone shows the existence of an enforceable contract. In addition, many of the essential terms of the contract were corroborated by the testimony of other witnesses. Simply stated, the testimony shows that he accepted an agreement offered to him that if he would by use of his mining experience develop and promote defendants' property by mining it so as to stimulate a sale of it for a higher price than had been offered for it the defendants would pay to plaintiff in the event of a sale a one-fourth interest in the proceeds of the sale over $20.00 per acre.

Several witnesses testified to the fact that defendants by their own statements were to pay plaintiff the one-fourth share for his part in the property-sale venture. The evidence showed that much work was performed by plaintiff in preparing the property and in setting up the equipment for mining. There is no dispute that a mining operation of sorts was carried on for a period of time prior to the sale. In fact, several ounces of gold were obtained from the operation. Several witnesses testified to the development of the property and of plaintiff's attempt to sell the property for a fair figure. There is sufficient evidence of plaintiff's performance, coupled with defendants' actions, to support all the essentials of the contract claimed by the plaintiff. The truth of plaintiff's assertions was a question of fact for the jury's determination. It found in favor of plaintiff and fixed damages for the breach. The jury's finding is not subject to reversal if fairly supported by the evidence.

Affirmed.

STEVENS, P. J., and CASE, J., concur.