OPINION
HOWARD, Chief Judge.
This case concerns an agreement by American Savings & Loan Association (now First Federal Savings & Loan Association) to provide the interim and permanent fi *211 nancing for the building of a number of duplexes. After appellant presented its evidence, the trial court granted a directed verdict in appellee’s favor. We set forth the facts in the light most favorable to appellant. Rocky Mountain, etc. v. Biddulph Oldsmobile, 131 Ariz. 289, 640 P.2d 851 (1982).
In April 1979 John Kline, appellant’s president, met Dr. Irwin Spector, vice president of American Savings at Specter’s request to discuss the possibility of establishing a business relationship between appellant and American Savings. Appellant was planning to build a duplex development on 12 lots and was undecided whether to build and sell the entire project or whether it should keep some of the units as an investment and rent them. Appellant decided that it would initially build four duplexes and Spector, after inspecting the plans, told Kline that subject to the approval of the loan committee, of which he was a member, American Savings would, if appellant elected to keep the units and rent them, provide appellant with 80% non-owner occupied financing at 11.5% interest with 25-year amortization. Spector also said that if appellant elected to sell them, American Savings would provide 95% owner-occupied permanent financing with a 5% downpayment at 11.5% interest and two points and would also provide the interim financing necessary to construct the buildings. Spec-tor told Kline he liked the project and that American Savings wanted to be involved in eventually financing all 12 units.
A couple of days later Spector called Kline and told him that he had his permanent financing, that appellant would have six months to complete the construction and at the end of the six months they would put on the permanent loans.
Pursuant to Specter’s call, appellant commenced construction on four units. In May 1979 Kline decided he would try to sell all of his units, instead of keeping them as an investment, and contacted Richard White, a real estate broker, to help him sell them. Toward the end of May 1979 Kline and White went to see Spector and told him of their plans. Spector told them that American Savings would place the permanent financing on the project, if the buildings were owner-occupied, on the basis of a 95% loan, not to exceed $79,500, 5% down, 2lk discount points and amortization over 25 years. It was agreed that appellant was to put these terms in their deposit and receipt agreements and would also specify American Savings as the lender. Spector also told Kline and White that before they could get a construction loan and permanent financing on a unit, they would have to first presell it and that for each deposit and receipt agreement White brought in, American Savings would allow another construction loan and extend permanent financing for another unit.
White secured buyers for eleven of the twelve units, had them sign deposit and receipt agreements with the required language, and took the documents to Spector who said they looked all right. Spector told White American Savings would start scheduling interviews with the prospective buyers in order to see whether they were qualified for financing. In the meantime, American Savings extended interim loans to appellant in the sum of $660,000 and appellant started constructing more units.
After a month or so passed, in the latter part of August or first part of September, none of the buyers had been interviewed for loan applications and White and Kline met again with Spector. Spector said American Savings could not extend the permanent financing to which it previously had agreed because the market had changed. He said American Savings would only provide 90% financing which meant that the buyer had to make a 10% down-payment. American Savings would also require appellant to pay a commitment fee. Because he was already in debt in the sum of $660,000, Kline, on September 17, 1979, entered into a written loan commitment agreement with American Savings. The terms agreed to were that American Savings would lend 90% of the value of the property, not to exceed $75,000 for each duplex, with no determined interest rate or *212 discount rate, such rates to be those prevailing at the time the loan was approved. The commitment was good for nine months. There was also a commitment fee of $6,750 which appellant paid.
Appellant lost his buyers because of the increased downpayment requirement and had to secure permanent financing elsewhere. It filed this action for damages for breach of contract and for misrepresentation. The misrepresentation claim was voluntarily dismissed at trial.
It was appellant’s contention at trial that American Savings made an offer to it for interim and permanent financing which it accepted when it delivered the deposit and receipt agreements to Spector.
Appellee argues there was no consideration for the alleged oral contract, that it was not definite, and that there was no mutuality of contract. It further argued that any oral contract was discharged by the substitution of the written contract of September 17, 1979, and that the September 17 contract also constituted an accord and satisfaction.
Appellant countered appellee’s argument by contending there was consideration for the oral contract and that therefore no mutuality of contract was required. Further, it argued that the September 17 written agreement was not binding because it was not supported by consideration since appellee was only doing what it was under a legal obligation to do. Appellant made other arguments below which we need not discuss in view of our disposition of the contentions previously enumerated.
THE ORAL CONTRACT
For an enforceable contract to exist, there must be an offer, an acceptance, consideration, and sufficient specification of terms so that obligations involved can be ascertained. Savoca Masonry Co., Inc. v. Homes and Son Construction Company, Inc., 112 Ariz. 392, 542 P.2d 817 (1975). An offer is “... a manifestation of willingness to enter into a bargain, so made as to justify another person in understanding that his assent to that bargain is invited and will conclude it.” Restatement (Second) of Contracts § 24. The offer creates a power of acceptance permitting the offeree by accepting the offer to transform the offer as promised into a contractual obligation. Calamari & Perillo, “Contracts” § 15. The evidence shows that at the meeting at the end of May 1979 American Savings made an offer to appellant to provide the interim and permanent financing of the duplex project.
An acceptance is “... a manifestation of assent to the terms thereof made by the offeree in a manner invited or required by the offer.” Restatement (Second) of Contracts § 50. Here, appellant accepted American Savings’ offer when White brought the deposit and receipt agreements to Spector.
Consideration is a benefit to the promisor or a loss or detriment to the promisee, and there is no consideration for a promise where no benefit is conferred on the promisor or a detriment suffered by the promisee. Federal Rubber Company v. Pruett, 55 Ariz. 76, 98 P.2d 849 (1940). A promise for a promise is adequate consideration. Tucson Federal Savings & Loan Association v. Aetna Investment Corporation, 74 Ariz. 163, 245 P.2d 423 (1952); Lessner Dental Laboratories, Inc. v. Kidney, 16 Ariz.App. 159, 492 P.2d 39 (1971). American Savings promised to provide the financing for the duplexes and appellant promised to bring the purchasers to American Savings for their loans. There was adequate consideration here. We need not decide whether there was mutuality of obligation since the existence of consideration vitiates the need for such mutuality. Restatement (Second) of Contracts § 79, and see, Malcoff v. Coyier, 14 Ariz.App. 524, 484 P.2d 1053 (1971).
An offer cannot be accepted so as to form a contract unless there is sufficient specification of terms so that the obligations involved can be ascertained. Savoca Masonry Co., Inc. v. Homes and Son Construction Company, Inc., supra. See also *213 Restatement (Second) of Contracts § 33. This requirement was met here.
THE EFFECT OF THE SEPTEMBER 17 CONTRACT
Appellee first contends the written contract of September 17 constituted an accord and satisfaction. We do not agree. An accord is “... a contract under which an obligee promises to accept a stated performance in satisfaction of the obligor’s existing duty. Performance of the accord discharges the original duty.” Restatement (Second) of Contracts § 281(1). The September 17 contract was not an accord and satisfaction. It was a substituted contract which is distinguishable from an accord and satisfaction:
“... Because the obligor’s original duty is not satisfied until the accord is performed, an accord differs from a substituted contract, under which a promise of substituted performance is accepted in satisfaction of the original duty____” Restatement (Second) of Contracts § 281, comment e.
Here, the written contract itself and the evidence show that the promise of substituted performance was accepted by appellant in satisfaction of appellee’s original duty. Therefore, the question is whether or not there was a valid substituted contract.
A substituted contract is defined in Restatement (Second) of Contracts § 279 as follows:
“... (1) A substituted contract is a contract that is itself accepted by the obligee in satisfaction of the obligor’s existing duty.
(2) The substituted contract discharges the original duty and breach of the substituted contract by the obligor does not give the obligee the right to enforce the original duty.”
A common type of substituted contract is one that contains a term that is inconsistent with a term of an earlier contract between the parties. If the parties intend the new contract to replace all the provisions of the earlier contract, the contract is a substituted contract. Restatement (Second) of Contracts § 279, comment a. But was this a valid substituted contract? A substituted contract is not effective unless it is supported by consideration or some substitute for consideration. “Performance of a legal duty owed to a promissor which is neither doubtful nor the subject of honest dispute is not consideration____” Restatement (Second) of Contracts § 73; see 1A Corbin on Contracts § 171 (1963); and cf. Leone v. Precision Plumbing and Heating of Southern Arizona, 121 Ariz. 514, 591 P.2d 1002 (App. 1979). Here, appellee had already an existing contractual duty to provide financing on terms much more favorable than those agreed upon in the written contract. Therefore, there was no consideration for the September 17 written contract and the prior oral agreement was never discharged. The trial court erred in directing a verdict in favor of appellee.
Reversed and remanded for further proceedings consistent with this opinion.
HATHAWAY and BIRDSALL, JJ., concur.