NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

In re the Matter of the Estate of:

ROGER L. JOHNSON, *Deceased*.

AUDREY L. ROUNDING, *Petitioner/Appellant*,

*v.*

CAROLYN BOS, *Respondent/Appellee*.

No. 1 CA-CV 25-0050 PB

FILED 02-06-2026

Appeal from the Superior Court in Maricopa County
No. PB2021-000145
The Honorable Lisa Ann VandenBerg, Judge (ret.)

**AFFIRMED**

COUNSEL

Audrey L. Rounding, Phoenix
*Petitioner/Appellant*

Jaburg & Wilk, P.C., Phoenix
By Kathi M. Sandweiss, Lauren L. Garner, Ilya Prokopets
*Counsel for Respondent/Appellee*

---

**MEMORANDUM DECISION**

Presiding Judge James B. Morse Jr. delivered the decision of the Court, in which Judge Anni Hill Foster and Judge Veronika Fabian joined.

---

**M O R S E**, Judge:

¶1　　　　Audrey Rounding ("Audrey") appeals from the court's judgment in favor of Carolyn Bos ("Carolyn").[1]

**FACTS AND PROCEDURAL BACKGROUND**

¶2　　　　Audrey and Roger Johnson ("Decedent") married in 2000. The parties stopped living together in February of 2019, and Decedent filed for divorce that May. Decedent was diagnosed with cancer in October 2020 and died December 29, 2020. Because of Decedent's death, the superior court dismissed the divorce action. *See* Ariz. R. Fam. Law P. 37(a)(1). Audrey and Decedent had no children together, but Decedent's two adult children, Holly and Carolyn, survived him. Carolyn was named the Personal Representative of Decedent's Estate and the Successor Trustee of the Roger L. Johnson Revocable Trust dated October 30, 1995 ("Decedent's Trust"). To initiate probate, Carolyn submitted Decedent's will, which he signed on December 28, 2020.

¶3　　　　Prior to marriage, the parties entered a prenuptial agreement ("Prenuptial Agreement"). The Prenuptial Agreement stated, among other things:

> It is their mutual desire to enter into this agreement so that they will continue to own and control their own property. All properties which belong to each of the above parties shall forever remain their personal estate. The parties shall have AT ALL TIMES the full, rightful authority, in all respects to use, sell, manage, gift and/or convey any and all property which may presently belong to him.

¶4　　　　The Prenuptial Agreement further provided that all assets of Decedent's Trust were to remain outside the marital estate and be disposed

---

[1]　　Consistent with the parties' usage in their briefing, we respectfully refer to them by their first names.

of according to the trust's terms. Another provision stated a life insurance policy would be purchased for Decedent, naming Audrey as the beneficiary and owner.

¶5          After filing a series of petitions and amended petitions asserting various claims, in September 2023, Audrey filed a petition, asserting claims for a breach of the Prenuptial Agreement, a community lien, an equitable division of property, and an inventory and accounting. On October 31, 2023, the court denied Audrey's attempt to file an additional amended petition.

¶6          On May 13, 2024, Carolyn filed a motion in limine seeking to preclude any "evidence of a computation and measure of damages" related to requests for monetary awards, equalization, or offset in connection with Audrey's claims for a community lien or equitable division of community property. On May 28, 2024, Audrey responded, arguing that she had made contributions which increased the value of the community and entitled her to an interest in Decedent's property. She also attached an exhibit, which she claimed "fully disclosed the measure and computation of damages." After argument, the court granted the motion in limine.

¶7          In July 2024, after an eight-day bench trial, the court entered judgment. The court denied Audrey's claims related to the Prenuptial Agreement, finding that the life-insurance provision was unenforceable. The court denied Audrey's claims related to a community lien, finding she failed to demonstrate that her contributions increased the value of Decedent's separate property. The court granted Audrey's claim related to equitable property division by distributing various community assets and properties. The court found that Audrey's request for an inventory and accounting deadline had been resolved prior to trial and was moot. The court also granted leave for Carolyn to file a request for attorney fees and costs.

¶8          In July 2024, Carolyn and her counsel submitted requests for attorney fees and costs under Arizona Rule of Probate Procedure 33. On November 18, 2024, the court ordered Audrey to pay $294,243.25 in fees and costs.

¶9          Audrey appealed, and we have jurisdiction under A.R.S. § 12-2101(A)(1).

## DISCUSSION

¶10            The assets at the center of this litigation are Country Life Development, Inc. ("Country Life") and Savant Estates, LLC ("Savant").   In July 1986, Decedent incorporated Country Life in Arizona.  In October of 2004, Country Life and a company owned by an unrelated third party formed Savant.  Country Life held a 50% membership interest in Savant.

## I.      Motion in Limine.

¶11            In her motion in limine, Carolyn asserted that Audrey had not disclosed a computation or measure of the damages, as required by Arizona Rule of Civil Procedure ("Rule") 26.1(a)(7).  In response, Audrey argued the court was required to presume any property acquired during the marriage was community property and that her efforts during the marriage increased the value of the property.  Accordingly, she asserted she was entitled to an equitable division of the property.  She also attached an exhibit, prepared by her counsel, which she described as a comprehensive inventory of her and Decedent's assets at the time of Decedent's death.  After a hearing, the court granted the motion "[b]ased on the entirety of the court record in this matter, the discussion held, and the arguments presented."  Audrey asserts that the court abused its discretion by granting the motion in limine.

¶12            "We review evidentiary rulings for an abuse of discretion and generally affirm a trial court's admission or exclusion of evidence absent a clear abuse or legal error and resulting prejudice." *John C. Lincoln Hosp. & Health Corp. v. Maricopa Cnty.*, 208 Ariz. 532, 543, ¶ 33 (App. 2004); *see also Marquez v. Ortega*, 231 Ariz. 437, 441, ¶ 14 (App. 2013) (explaining the question is whether the court reached its decision without exceeding the bounds of reason, given the law and circumstances).  We review the court's determination under Rule 26.1 for an abuse of discretion. *SWC Baseline & Crismon Invs., L.L.C. v. Augusta Ranch Ltd. P'ship*, 228 Ariz. 271, 284, ¶ 47 (App. 2011).[2]

¶13            The spouse claiming that community labor and funds increased the value of the other spouse's separate property has the burden of showing the amount of the increase. *Hefner v. Hefner*, 248 Ariz. 54, 60, ¶ 17 (App. 2019); *see also Walker v. Walker*, 256 Ariz. 295, 301, ¶¶ 27–29 (App.

---

[2]      Although this is a probate matter, we cite to and analyze the civil rules because the parties do so in their briefs. *See* Ariz. R. Prob. P. 4(a)(1) (applying civil rules to probate proceedings unless they are inconsistent with the probate rules).

2023) (rejecting husband's evidence in the form of testimony and photographs of improvements to separate property because husband failed to present appraisals or other competent evidence to demonstrate how his contributions increased the property's value). Rule 26.1(a)(7) requires parties to disclose "a computation and measure of each category of damages alleged." Rule 37(c)(1) states "a party who fails to timely disclose information . . . or a document required by Rule 26.1 may not use the information . . . or document as evidence at trial." *See also Estate of Brady v. Tempe Life Care Village, Inc.*, 254 Ariz. 122, 127, ¶ 23 (App. 2022) ("[D]amages must be disclosed with some specificity long before trial.").

**¶14**         Throughout these proceedings, Audrey attempted to shift the burden of calculating the amount of her claim onto Carolyn or the court. Carolyn consistently requested disclosure of Audrey's calculations. In the pretrial statement, Carolyn expressed concern that Audrey's "lack of disclosure and total absence of any expert reports, forensic accountings, valuations, appraisals, or any other reliable synthesis of information," would lead to a disordered trial with Audrey introducing voluminous records in order to quantify her claims for the first time at trial.

**¶15**         Audrey fails to demonstrate that the court erred or was unreasonable in enforcing Rule 26.1(a)(7). Additionally, Audrey did not provide a transcript from the motion in limine hearing, so we presume that the missing record supports the court's findings. *See* ARCAP 11(b)–(c) (stating it is the appellant's responsibility to provide this Court with all transcripts necessary to consider the appeal); *State ex rel. Dep't of Econ. Sec. v. Burton*, 205 Ariz. 27, 30, ¶ 16 (App. 2003) (explaining when a party fails to provide a transcript on appeal, we presume the missing portions of the record would support the court's findings). On this record, Audrey has not demonstrated the court abused its discretion. *See* Ariz. R. Civ. P. 37(c)(1).

## II.     Division of Community Property.

**¶16**         We review the court's classification of property as separate or community de novo and the court's distribution of property for an abuse of discretion. *Bell-Kilbourn v. Bell-Kilbourn*, 216 Ariz. 521, 523, ¶ 4 (App. 2007). We consider the evidence in the light most favorable to upholding the decree, deferring to the court's assessment of witness credibility. *Id*. at 522 n.1; *Gutierrez v. Gutierrez*, 193 Ariz. 343, 347–48, ¶ 13 (App. 1998). We defer to the court's factual findings unless clearly erroneous. *Brucklier v. Brucklier*, 253 Ariz. 579, 582, ¶ 10 (App. 2022).

**¶17** Audrey argues that the court abused its discretion by determining that Country Life, Savant, and other trust accounts and assets were separate property. She argues the court is required to divide these assets equitably because they were community property. She also asserts that granting the motion in limine prevented her from demonstrating her contributions increased Savant's value.

**¶18** We disagree. Property acquired before marriage is separate property. A.R.S. § 25-213(A). Any increase in value or profits from a separate-property business are considered separate property if generated by the inherent nature of the business but are considered community property if attributable to community effort or investment. *Kim v. Pak*, 258 Ariz. 594, 597, ¶ 8 (App. 2024); *see also Cockrill v. Cockrill*, 124 Ariz. 50, 52 (1979) (explaining the increase in value of separate property remains separate unless the increase is "a result of the work effort of the community").

**¶19** Country Life was incorporated in 1986 by Decedent prior to his marriage. Savant was formed in 2004 by Country Life and an unrelated business partner. Country Life owned half of Savant. Audrey acknowledged at trial that Country Life was owned by Decedent's Trust and the Prenuptial Agreement stated that all assets of Decedent's Trust were to remain outside the marital estate. Because Country Life was purchased with Decedent's separate property, it maintained its status as separate property pursuant to the Prenuptial Agreement. Thus, Audrey had the burden of showing the amount of the increase in value of Savant and Country Life was due to community contributions. *See Hefner*, 248 Ariz. at 60, ¶ 17. She did not meet her burden. Besides conclusory statements that community efforts increased the value of Savant, Audrey points to nothing in the record to support her claim. *See Adams v. Valley Nat'l Bank of Ariz.*, 139 Ariz. 340, 343 (App. 1984) ("We are not required to assume the duties of an advocate and search voluminous records and exhibits to substantiate an appellant's claims."). In addition, the court found that Audrey's testimony lacked credibility and contradicted itself.

**¶20** On this record, we agree with the court's finding that Country Life and Savant were Decedent's separate property, and Audrey presented no evidence that the court erred in its distribution of property. *See Bell-Kilbourn*, 216 Ariz. at 523, ¶ 4.

## III.    Prenuptial Agreement.

### A.  Life Insurance Policy.

**¶21**         Audrey argues the Prenuptial Agreement required Decedent to provide her with a life insurance policy, and the court erred by finding this provision unenforceable.  We disagree.  The Prenuptial Agreement stated that "[a]n insurance policy will be purchased on the life of Roger Johnson, the beneficiary and owner will be Audrey Rounding as long as they are married."  In its order, the court found this provision unenforceable because the "language regarding the life insurance policy was overly vague," and did "not specify the intended value of the policy, the timing of the purchase of the policy or its length or the funds to be used to purchase the policy."  The court concluded that Audrey had failed to demonstrate the Prenuptial Agreement obligated Decedent to maintain a life insurance policy.

**¶22**         We review the enforceability of a premarital agreement de novo, but we review the court's factual findings for an abuse of discretion affirming unless clearly erroneous.  *Alulddin v. Alfartousi*, 255 Ariz. 436, 440, ¶ 8 (App. 2023).  When reviewing agreements, we give them a reasonable construction to effectuate the intention of the parties.  *Robertson v. Petz*, --- Ariz. ---, ---, ¶ 9, 574 P.3d 232, 237 (App. 2025).

**¶23**         "For an enforceable contract to exist, there must be an offer, an acceptance, consideration, and sufficient specification of terms so that obligations involved can be ascertained."  *Rogus v. Lords*, 166 Ariz. 600, 602 (App. 1991).  A contract must clearly define obligations, or, if terms are uncertain, no contract exists.  *Malcoff v Coyier*, 14 Ariz. App. 524, 526 (1971); *see also Rogus*, 166 Ariz. at 602 ("The requirement of certainty is relevant to the ultimate element of contract formation, i.e., whether the parties manifested assent or intent to be bound.").  The burden is on the proponent to prove all the essential terms of an enforceable contract.  *Malcoff*, 14 Ariz. App. at 526.

**¶24**         We agree that Audrey failed to demonstrate the Prenuptial Agreement obligated Decedent to maintain a life insurance policy.  The intended reach of the provision is unclear as it does not include the value of the policy, who would purchase it, or any other specifications.  The court found Audrey's testimony unpersuasive, lacking credibility, and contradicted by other testimony.  *See Gutierrez*, 193 Ariz. at 347–48, ¶ 13 (stating we defer to the court's assessment of witness credibility).  Additionally, the court noted that Audrey made no effort to renew the policy or enforce her claimed contractual rights even though she was given

notice of the policy's expiration in 2012. *See Malcoff*, 14 Ariz. App. at 526 (explaining that where there are ambiguous terms, a party's performance may indicate there was a meeting of the minds and a mutual understanding of agreement). Accordingly, we agree with the court's determination that this provision was unenforceable.

## B. Division of Property.

**¶25** Audrey also references various assets and issues, including a Phoenix property, a Sedona property, Sihaya Development Company, LLC ("Sihaya"), a Coronado condo, an office building, a certificate of deposit, Country Life, and Savant, arguing that the court erred in its distribution and classification of community property. Although Audrey does not explain how the enforcement of the Prenuptial Agreement relates to these arguments, we will address them here because she included them in this section of her brief.

**¶26** On October 31, 2019, Audrey and Roger entered into a binding agreement under Arizona Rule of Family Law Procedure 69 regarding the disposition of the Phoenix property and the Sedona property. The court relied on this agreement in its ruling. To the extent Audrey is arguing the court erred in its distribution of these properties or enforcement of this agreement, her argument fails as she has presented no evidence of a defect in the agreement. Ariz. R. Fam. Law P. 69(c) (stating a Rule 69 agreement "is presumed valid, and a party who challenges the validity of an agreement has the burden to prove any defect in the agreement").

**¶27** Audrey argues the distribution was inequitable because, after paying fees and other costs related to the properties, she will have very little money left. In its order, the court determined Sihaya and the Coronado condo were community property. As for the certificate of deposit, the office building, Country Life, and Savant, Audrey points to nothing in the record or any legal authority to support her claims that the court erred. Accordingly, we affirm the court's distribution of property. *See Gutierrez*, 193 Ariz. at 346, ¶ 5 ("We view the evidence in the light most favorable to sustaining the trial court's findings and determine whether there was evidence that reasonably supports the court's findings."); *see also Adams*, 139 Ariz. at 343 ("We are not required to assume the duties of an advocate and search voluminous records and exhibits to substantiate an appellant's claims.").

¶28　　　　Audrey also argues generally that the court was "totally unaware" of A.R.S. § 25-211. While Audrey is correct that A.R.S. § 25-211(A) establishes that property acquired during marriage is presumed to be community property, parties may enter into a premarital agreement to abrogate their present and prospective property rights. *Elia v. Pifer*, 194 Ariz. 74, 83, ¶ 46 (App. 1998); *see also Hart v. Hart,* 220 Ariz. 183, 188, ¶ 18 (App. 2009) (explaining we presume that the court knows and applies the correct law unless that presumption is rebutted by the record).

## IV.　　Attorney Fees at Trial.

¶29　　　　Carolyn and her counsel requested attorney fees and costs totaling $399,791.61. Audrey argued that the court should award only $47,342.50 in fees because those could be traced to her unreasonable conduct. The court ultimately reduced the amount and awarded Carolyn $294,243.25 under A.R.S. §§ 14-1105 and 12-349.

¶30　　　　Audrey argues that the court erred in its award of attorney fees. Audrey asserts that her positions were reasonable because the court erred in its ruling and she was correct in her contentions.

¶31　　　　We review an award of attorney fees for an abuse of discretion. *Orfaly v. Tucson Symphony Soc'y*, 209 Ariz. 260, 265, ¶ 18 (App. 2004). We will affirm an award if there is any reasonable basis for doing so. *RS Indus., Inc. v. Candrian*, 240 Ariz. 132, 138, ¶ 21 (App. 2016). The court awarded Carolyn's request for fees under A.R.S. §§ 14-1105 and 12-349. In its order, the court described a variety of ways in which Audrey had "acted unreasonably throughout the proceedings" and prolonged the litigation. Because we affirm the court's substantive rulings, and Audrey has not demonstrated any abuse of discretion, we affirm the court's grant of attorney fees.

## V.　　Attorney Fees on Appeal.

¶32　　　　Carolyn requests attorney fees on appeal under A.R.S. §§ 12-341, -349, and 14-1105. In our discretion, we decline to award attorney fees. Carolyn, as the prevailing party on appeal, is entitled to recover taxable costs upon compliance with ARCAP 21. *See* A.R.S. § 12-341.

## CONCLUSION

¶33        We affirm.



**MATTHEW J. MARTIN • Clerk of the Court**
**FILED**:        JR